UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **ZAYJUAN PAYNE** <br><br> Defendant. | Case No. 1:19-cr-00109 (TNM) |

## MEMORANDUM OPINION

Zayjuan Payne is charged with unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1), the federal "felon-in-possession" law. He now moves to dismiss the indictment, arguing that because his prior convictions were set aside under the District of Columbia's Youth Rehabilitation Act ("YRA"), the Government cannot show that he has a qualifying predicate felony as required by Section 922(g)(1). The Court agrees. It will therefore grant his motion and dismiss his indictment.

### I.

In the early morning hours of a Friday in March, police officers conducted a security sweep of a parking garage near a D.C. night club. ECF No. 1-1 at 1. They noticed an unoccupied car that had a purple (yes, purple) handgun and an extended magazine sticking out of the rear pocket of the driver's seat. *Id*. Later, they watched three people enter the car and drive away. *Id*. The police stopped the car. *Id*. Because they noticed a gun in the car, the officers detained the driver and two passengers, one of whom was Payne. *Id*. The officers saw the purple handgun and extended magazine were now on the rear floorboard at Payne's feet. *Id*.

Payne was ultimately indicted by a federal grand jury for violating 18 U.S.C. § 922(g)(1). *See* ECF No. 2.

Section 922 makes it unlawful for "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Congress later narrowed the scope of Section 922 in the Firearms Owners' Protection Act of 1986, 18 U.S.C. § 921(a).

The Act states that what constitutes a "crime punishable by imprisonment for a term exceeding one year" is determined "in accordance with the law of the jurisdiction in which the proceedings were held." *Id*. § 921(a)(20). But any conviction that "has been expunged, or set aside or for which a person has been pardoned or had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id*.

Payne has twice been convicted of crimes punishable by imprisonment for a term exceeding one year. *See* ECF No. 26-2. The first felony conviction was for attempted robbery. *See id*. at 3. The second was for assault with significant bodily injury. *See id*. at 6.

But both convictions were ultimately set aside under the YRA, D.C. Code § 24-906. *See id*. The YRA provides that the sentencing court may, in its discretion, "unconditionally discharge" a youth offender before the end of any sentence imposed. *See* D.C. Code § 24-906(a), (e). Any such discharge automatically sets aside the offender's underlying conviction. *Id*.

For each conviction, the Superior Court of the District of Columbia unconditionally discharged Payne from the sentence it imposed before he completed it. *See* ECF No. 26-2 at 3,

6. Payne's convictions were thereby set aside or expunged.[1] *Id*. The Superior Court issued an "Order of Discharge and Certificate Setting Aside Conviction" for each expunged felony. *Id*. These certificates read in relevant part:

- "The offender has successfully completed the conditions of his/her sentence prior to the expiration of the maximum period previously imposed by the Court,"
- "Therefore, it is hereby ORDERED that the offender be unconditionally discharged from the imposed sentence and,"
- "It is further ORDERED that by this discharge the conviction shall be set aside, and the Court shall issue a copy of this order and Certificate to the offender, and all appropriate agencies, pursuant to D.C. Code 24-906(e)."

*See id*. at 3. The certificates do not mention any firearms prohibitions. *See id*.

Because his convictions were set aside under the YRA, and because the set-aside certificates did not expressly bar him from possessing a firearm, Payne argues that he cannot be convicted under 18 U.S.C. § 922(g)(1). He has therefore moved to dismiss the indictment against him. *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 23.

The Government opposes Payne's motion. *See* Gov't's Resp., ECF No. 27. It argues that, even if the set-aside certificates do not discuss the possession of firearms, Payne "is expressly prohibited from possessing firearms by District of Columbia law, as stated in both the [YRA] and its procedures." *Id.* at 5. The Government points to Subsection (f) of the YRA, which provides that a "conviction set aside under this section may be used in determining whether a person has been in possession of a firearm in violation of § 22-4503." D.C. Code

---

[1] The parties agree that, for the purposes of this case, an "expungement" and a "set-aside" are functionally equivalent. *See* Hr'g Tr. 18:7-15; 21:16-22. The Court therefore uses the terms interchangeably.

§ 24-906(f)(8). Section 22-4503, in turn, states that "[n]o person shall . . . have a firearm in his or her possession . . . within the District of Columbia, if the person has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." D.C. Code § 22-4503(a)(1). These laws, the Government argues, expressly prohibit Payne from possessing a firearm. Gov't's Resp. at 5. In the Government's view, he may thus be charged under the federal felon-in-possession law. *Id*.

The parties submitted briefing on these issues and presented oral arguments before the Court. Payne's Motion to Dismiss is now ripe for review.

## II.

Before trial, a criminal defendant may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). A claim that a statute named in the indictment does not proscribe the alleged conduct is properly brought through a motion to dismiss. *See United States v. Hillie*, 289 F. Supp. 3d 188, 193 (D.D.C. 2018).

In ruling on a motion to dismiss, the Court is "limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *Id*. The Court must presume that the allegations in the indictment are true. *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). The "operative question" is whether these allegations, if proven, are "sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

**III.**

Even if the factual allegations against Payne are proven true, the expungement of his prior felonies make a conviction under 18 U.S.C. § 922(g) impossible. For this reason, the Court must dismiss the indictment.

Consider first the statutory text. An expunged conviction cannot serve as the basis of a Section 922(g) violation unless the expungement "*expressly provides* that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20) (emphasis added). The certificates setting aside Payne's convictions say nothing about firearms. *See* ECF No. 26-2 at 3, 6. The YRA, however, does provide that an expunged conviction may still serve as the basis for a violation of D.C.'s felon-in-possession law. *See* D.C. Code § 24-906(f)(8). Thus, the issue here is whether it is the certificate, the YRA, or some combination of the two that serves as the "expungement" of a conviction. If it is the first, Payne cannot be convicted under Section 922(g). If it is either of the latter two options, he may be.

Courts are split on this issue. Some believe that Section 921(a)(20) "limits the inquiry to the language of the certificate." *United States v. Bost*, 87 F.3d 1333, 1335 (D.C. Cir. 1996) (citing examples from the Fifth, Seventh, and Ninth Circuits). Others believe that the "whole of state law must be reviewed in order to determine whether a felon's firearms privileges are restricted." *Id*. (citing examples from the Fourth, Sixth, and Tenth Circuits).

*Bost* discussed the two approaches without conclusively adopting either. There, an Ohio defendant was charged with violating Section 922(g). *See id.* at 1334. The predicate felony was a conviction for kidnapping. *Id*. But after serving his sentence for that offense, the defendant had his civil rights restored. *Id*. Ohio issued him a certificate that expressly restored his rights to

serve on a jury and "to hold office of honor, trust, or profit." *Id*. Separately, a statute automatically restored his right to vote. *Id*.

Bost argued that because the certificate restoring his civil rights placed no restrictions on his right to possess a firearm, he could not be convicted under Section 922(g). *See id*. The Government urged the Circuit to look past the certificate to Ohio's state law, which "prohibits convicted felons from possessing firearms." *Id*. at 1335.

The Circuit began by instructing that courts must presume that Congress "says in a statute what it means and means in a statute what it says." *Id*. (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 252-54 (1992)). Thus, if the statutory text is unambiguous, courts need not look any further to identify the intent of Congress. *Id*. at 1336 (citing *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987)). Applying these principles, it found that the text of Section 921(a)(20) "makes it clear" that "a court may look no further than the source of the restoration of [a defendant's] civil rights to see whether his gun-related rights have been restricted." *Id*.

Because there were two "sources" of the restoration of the defendant's civil rights—the certificate he was issued and a state statute that restored a separate right—the Circuit reviewed both. *Id*. at 1337. It found that "neither imposed any restriction on his right to possess a gun." *Id*. It therefore concluded that it "need not decide whether, if his right to vote had not been restored by statute, the certificate would have constituted a sufficient 'restoration of civil rights' to satisfy the requirements of [S]ection 921(a)(20)." *Id*.

Here, both the Government and Payne rely on *Bost* to support their positions. The Government suggests that, considering the choice between reviewing the "language of the certificate" or the "whole of state law," "the *Bost* Court appeared to take a middle approach."

6

Gov't's Resp. at 4. This middle approach, the Government argues, permits consideration of the YRA. *Id*.

In fact, a judge in this district has read *Bost* this way. *United States v. Aka* considered whether a conviction set aside under the YRA may be used as a predicate felony for Section 922(g). 339 F. Supp. 3d 11 (D.D.C. 2018). The court found that both the set-aside certificate and the YRA constituted the "source" of the expungement of the defendant's conviction. *See Aka*, 339 F. Supp. 3d at 16 (concluding that the "authorizing statute is as much a part of the 'expungement' as is the certificate itself). So, because the YRA "expressly subjects [defendants with set-asides] to the District of Columbia's prohibition on felons possessing firearms," the court concluded that the defendant's "conviction qualifies under § 922(g)(1) as a prior [felony] conviction." *Id*. at 18.

Payne argues that *Aka* reads *Bost* too broadly. *See* Def.'s Reply, ECF No. 31 at 2-4. The Court, respectfully, agrees. True, *Bost* examined both the certificate and a state statute to determine whether either expressly prohibited the defendant from possessing a firearm. But, as the Circuit made clear, this was because the defendant's "right to vote was restored by a statute, and his rights to hold office and serve on juries were restored by a certificate." *Bost*, 87 F.3d at 1337. In other words, because the defendant had his "civil rights restored" by both a certificate and a statute, "such . . . restoration of civil rights" necessarily encompasses both sources. *See* 18 U.S.C. § 921(a)(20). The court had to look to both sources to determine whether his civil rights had been restored.

Indeed, what constitutes the "restoration of civil rights" is a different—and often harder—question than determining the source of an expungement, set-aside, or pardon. *See, e.g.*, *United States v. Thomas*, 991 F.2d 206, 212-13 (5th Cir. 1993) (discussing the difficulties in

identifying the state statute to review in "the case of passive (or automatic) restoration of civil rights"); *United States v. Erwin*, 902 F.2d 510, 513 (7th Cir. 1990) (noting that when a state "sends no document granting pardon or restoring rights," a prohibition on the possession of a firearm "is no less 'express' when codified elsewhere" in the state's laws).

In determining how to interpret "restoration of civil rights," courts must grapple with important questions the statute leaves unresolved. Which civil rights must be restored for Section 921 to apply? How many of these rights must be restored? Must the restoration be explicit and specific to a defendant? Or does some form of "restoration" occur immediately upon a convict's release from prison through the automatic operation of a state law?

These questions concern the potential applicability of Section 921 to a defendant charged with a Section 922 violation. They are, in other words, threshold questions that must be answered before a court may even consider whether a state has expressly prohibited the defendant from possessing a firearm. And it is to resolve these predicate questions that courts have used the "whole of state law" approach. *See, e.g.*, *United States v. Caron*, 77 F.3d 1, 2 (1st Cir. 1996) (noting that the First Circuit used to require a restoration of civil rights by "focused, individualized, affirmative action," but now considers state "laws of general application" to determine whether rights have been restored); *see also Thomas*, 991 F.2d at 213 (contrasting a certificate that restores "*all* civil rights" with the "passive (or automatic) restoration of civil rights" through state laws) (emphasis in original).

Expungements are different. Generally, whether a conviction has been expunged is a simpler, binary inquiry. It certainly is here. There is no question that Payne's convictions were expunged: he has the certificates to prove it. So there is no need to look beyond them to determine whether his convictions were set aside. *Accord United States v. Glaser,* 14 F.3d 1213,

1218 (7th Cir. 1994) ("When the state gives the person a formal notice . . . [courts should look] not at the contents of the state's statute books but at the contents of the document."). Again, the language of the statutory text is instructive. It requires that "such . . . expungement . . . expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). It is hard to see how the certificate itself is not the "expungement," and it contains no such express prohibition.

More, *Bost* emphasized that a "whole of state law" approach is "inconsistent with the plain directive of [S]ection 921(a)(20)." *Id*. at 1335. It noted that a narrower interpretation of that section "comports better with fairness than the alternative approach," because it "requir[es] the state to give the felon fair notice if his restoration of civil rights makes an exception for firearms." *Id*. at 1336. And it suggested that, based on the text of Sections 921 and 922, "it is not self-evident that Congress would have felt a particular need to federalize [a state's] restrictions on the possession of firearms." *Id*. at 1337.

*Bost* also cited *Erwin* with approval. *Id*. In that case, Judge Easterbrook described Section 921(a)(20) as "an anti-mousetrapping rule." *Erwin*, 902 F.2d at 512. He concluded that if "the state sends the felon a piece of paper implying that he is no longer 'convicted' and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher." *Id*. at 512-13.

*Erwin*'s reasoning, according to *Bost*, "suggests that even in a case where the issuance of a certificate may be superfluous, a state that wishes its felon-in-possession law to be enforced at

the federal level would be well-advised to include its firearms restrictions in any restoration certificate it provides a convicted felon." 87 F.3d. at 1337-38.[2]

Based on this discussion, the Court reads *Bost* as requiring that, when a Section 922(g) defendant is issued a certificate unconditionally setting aside his conviction or restoring his civil rights, the certificate should expressly forbid the defendant from possessing firearms. Both the plain text of the statute—which states that the "expungement" must "expressly" include this prohibition—and fair notice to the defendant support this reading.

Applying this proposition here, the indictment against Payne must be dismissed. He was issued certificates purporting to set aside his convictions. *See* ECF No. 26-2 at 3, 6. Each certificate "unconditionally discharged" him from the "imposed sentence." *Id*. Each stated that "by this discharge the conviction shall be set aside." *Id*. And each was titled "Order of Discharge and Certificate Setting Aside Conviction." *Id*. Neither certificate included any restriction on Payne's ability to possess a firearm. *Id*.

These certificates, by their clear terms, constituted the "expungement" or set-aside of Payne's convictions. And because neither "expressly provides that the person may not ship, transport, possess, or receive firearms," Payne did not receive fair notice of any such restriction. *See* 18 U.S.C. § 921(a)(20).[3] Thus, the convictions these certificates set aside cannot serve as

---

[2] Over two decades after this admonition from the D.C. Circuit, D.C.'s local courts continue to issue expungement certificates without this warning.

[3] During oral argument, Payne's counsel suggested that he cannot be prosecuted under Section 922 because a "federal offense is not enumerated in the [YRA]" and nothing in the statute "fairly supports even an inference that the legislature . . . intended to allow a federal crime to be prosecuted." Hr'g Tr. 19:2-8. But this argument misreads Sections 921 and 922. Indeed, if the set-aside certificates expressly provided that Payne may not possess a firearm under local law, this would be enough for a prosecution under Section 921. *See Thomas*, 991 F.2d at 209 (explaining that the purpose of Section 921 was to give *state* statutes about firearm possession federal effect).

the basis for a Section 922(g) offense. To hold otherwise would void the anti-mousetrapping purpose of Section 921(a)(20). *See Erwin*, 902 F.2d at 513 ("The final sentence of § 921(a)(20) cannot logically mean that the state may dole out an apparently-unconditional restoration of rights yet be silent so long as any musty statute withholds the right to carry guns.").

To be clear, nothing here suggests that Payne cannot be prosecuted in D.C.'s courts for a violation of the city's felon-in-possession law. Payne concedes that such a prosecution would be permissible in the Superior Court. Hr'g Tr. 21:10-12. Rather, the Court holds that, assuming the facts alleged against him are true, Payne may not be convicted of a Section 922(g) violation as a matter of law.[4]

### IV.

For these reasons, Payne's Motion to Dismiss will be granted. A separate Order accompanies this Opinion.

Dated: June 21, 2019                                         TREVOR N. McFADDEN, U.S.D.J.

---

[4] Because the Court finds that Section 921(a)(20) is clear, it need not determine whether the rule of lenity applies. But it notes that, if the statute is ambiguous, the rule would require resolving any doubt in Payne's favor. Lenity "means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Bifulco v. United States*, 447 U.S. 381, 387 (1980). The "touchstone" of the rule "is statutory ambiguity." *Moskal v. United States*, 498 U.S. 103, 107 (1990). Thus, if a "reasonable doubt persists about a statute's intended scope" after an interpretation of its text and structure, the rule should be applied in favor of a criminal defendant. *Id*. at 108.